UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **DONNA JOHNSON,** | : | CIVIL ACTION NO. |
|       **Plaintiff** | : | |
| | : | 3:13-CV-01131 (RNC) |
| **v.** | : | |
| | : | |
| **THE PORTER & CHESTER INSTITUTE, INC.** | : | |
|       **Defendant** | : | OCTOBER 6, 2014 |

## AMENDED COMPLAINT

### INTRODUCTION

1. This is an action for money damages, costs, attorney's fees, and other relief as a result of Defendant's discriminatory conduct against Plaintiff on the basis of her disability, Defendant's interference with Plaintiff's protected rights under FMLA and Defendant's retaliation against Plaintiff for exercising her rights under FMLA.

2. Plaintiff brings this action under the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. §46a-60 *et seq.* (hereinafter "CFEPA"), the Americans with Disabilities Act, 42 U.S.C. §12101 *et seq.* (hereinafter "ADA") and the Family and Medical Leave Act, 29 U.S.C. §2601 *et seq.* (hereinafter "FMLA"). This is further an action for discrimination on the basis of disability under state law and for violation of the common law under the laws of the State of Connecticut.

### PARTIES

3. Plaintiff, Donna Johnson, is a 40-year-old female residing in South Windsor, Connecticut.

4.     Defendant, The Porter & Chester Institute, Inc., ("Porter & Chester"), is a domestic for-profit corporation with offices located at 30 Waterchase Drive in Rocky Hill, Connecticut 06067.

## JURISDICTION

5.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because it asserts claims under the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.*

6.     This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's statutory claims under Connecticut law.

## ADMINISTRATIVE PREREQUISITES

7.     On or about November 11, 2011, Plaintiff filed a complaint alleging disability, and age discrimination in violation of CFEPA with the Connecticut Commission on Human Rights and Opportunities ("CHRO") and the Equal Employment Opportunity Commission ("EEOC").  The Complaint was amended on April 4, 2012 and designated as CHRO Case No. 1210165 and as EEOC Charge No. 16A-2012-00170.

8.     On June 13, 2013, Plaintiff received a Release of Jurisdiction from the CHRO.

9.     On June 20, 2013, Plaintiff received a Notice of Right to Sue from the EEOC.

10.    Accordingly, Plaintiff has satisfied all administrative prerequisites to filing a claim of disability discrimination in federal court under the Americans with Disabilities Act and the Connecticut Fair Employment Practices Act.

## BACKGROUND

11.    Defendant was, at all times relevant to this Complaint, engaged in commerce or in an industry or activity affecting commerce and employed fifty (50) or more employees for each working day during each of twenty (20) or more calendar work weeks in the current or preceding

calendar year and therefore is an employer as defined in 29 U.S.C. §2611(4).

12. Defendant is an employer subject to the requirements of the ADA and the CFEPA.

13. At all times relevant herein, Plaintiff was employed by Defendant for at least twelve (12) months and had at least one thousand two hundred fifty (1,250) hours of service with Defendant in the 12 months immediately preceding her need for leave and therefore was an "eligible employee" under the FMLA, as that term is defined in 29 U.S.C. § 2611(2)(A).

14. Plaintiff began working for Defendant on August 18, 2005 as an Accounts Receivable Specialist. Her primary duties during the course of employment were student billing, applying payments to student accounts, negotiating and agreeing on settlement of outstanding loan disputes, overseeing the work of two other employees as well as an outside collections company, Pinnacle, which was Defendant's contractor for accounts receivables.

15. During the relevant time period herein, her direct manager was James Bologa, Defendant's Chief Operating Officer.

16. At all times during her employment with Defendant, Plaintiff competently and diligently performed her duties.

17. On or about February 2010, Plaintiff fractured her heel and was out of the office for about nine (9) weeks. During that entire time period, Plaintiff used a laptop to work from home.

18. On or about April, 2010, Plaintiff returned to the office and found that Defendant had hired John Lenois as the Corporate Bursar and the person to whom Plaintiff would report. Mr. Lenois, in turn, reported directly to Mr. Bologa.

19. Plaintiff continued to monitor Pinnacle while still being required to conduct numerous collection activities including negotiating and agreeing on settlement of outstanding loan disputes and overseeing the collections work of two employees.

20. On or about early 2010, Plaintiff was contacted by Donald Brockhaus who had started his own collections company called Alternative Receivables Management ("ARM") and was interested in being Defendant's collections contractor. Mr. Brockhaus and Plaintiff had several discussions about ARM and its potential to assist Defendant in its collections activities.

21. On or about April, 2011, Defendant's managers, John Phelan, Vice President of Finance/CFO and Mr. Bologa, decided to stop using Pinnacle because it was performing below Defendant's expectations and to seek a different external collections company.

22. After the decision was made to end Defendant's business relationship with Pinnacle, Defendant's managers had several discussions with Mr. Brockhaus. On or about May, 2011, Porter and Chester agreed to hire ARM as its new outsourced collections contractor.

23. Subsequently, Plaintiff was informed by Mr. Bologa that she was to be the "point person" to interact with Mr. Brockhaus just as she had done with Pinnacle. At no time during Plaintiff's employ with Defendant was she informed that her job duties would be changed after ARM commenced its work as Defendant's collections contractor.

24. For several months during early to mid-2011, Plaintiff periodically experienced significant pain in her side. This periodic pain did not preclude her from attending work however, on or about July 25, 2011, Plaintiff experienced excruciating pain while driving to work, and upon her arrival at work, reported her need for medical attention to Mr. Lenois and was excused for the day.

25. That same day Plaintiff was examined at an urgent care walk-in center and was referred to her primary physician, Ivelisse A. Viruet, M. D. The following day, June 27, 2011, Plaintiff visited Dr. Viruet who ordered blood work and several tests. There was no definitive diagnosis at that time.

26. After July 26, 2012, due to the level of pain and the pain medications which Dr. Viruet prescribed for her, Plaintiff was unable to perform the duties of her position for more than three (3) consecutive days and accordingly she sought medical leave.

27. Ms. Colleen Warner, Defendant's Benefits Manager, recommended that Plaintiff complete paperwork for a leave under the FMLA in order to protect her job. Dr. Viruet completed the FMLA medical certification on or about July 29, 2011, which stated that "severe" and "recurring" flank pain necessitated referral to specialists for diagnostic tests, and that Plaintiff was unable to work for four to six weeks. The FMLA certification was transmitted to Defendant.

28. On or about August 2, 2011, Plaintiff received a letter from Ms. Warner which designated Plaintiff's requested leave as covered under FMLA. Plaintiff's initial return to work date was set as September 9, 2011 on the completed short term disability form sent by Ms. Warner to Defendant's insurance company.

29. Plaintiff's laboratory tests yielded abnormal results indicating a need for further evaluation and procedures. Plaintiff was examined by a gastroenterologist, Dr. Jeffrey Breiter, on or about August 25, 2011. Dr. Breiter determined that Plaintiff's symptoms required further testing (an endoscopy and colonoscopy) which tests could not be scheduled until mid-September, 2011. Therefore, Plaintiff emailed Ms. Warner on August 26, 2011 requesting that her FMLA

5

leave be extended.  Ms. Warner's response was that Plaintiff did not need to provide "details" of her medical condition, but to inform her of when she "might be returning to work."

30. On or about September 6, 2011, Dr. Viruet extended Plaintiff's leave in an updated FMLA medical certification indicating the necessity of the endoscopy and colonoscopy due to ongoing abdominal pain and abnormal laboratory tests.  The maximum duration of the leave was designated on the form as "four months," from the date of onset of the illness.  Ms. Warner received the updated FMLA form on or about September 14, 2011.

31. Plaintiff was able to return to work by October 3, 2011. On the disability claim form for Defendant's insurance company, Dr. Viruet certified that her probable return to work date would be October 1, 2011 which was a Saturday.

32. On or about September 27, 2011, Plaintiff contacted Ms. Warner by telephone and informed her that she was able to return to work as of Monday, October 3, 2011 and inquired as to what documentation was necessary to be recertified for work following the FMLA leave.

33. During this telephone conversation, Ms. Warner informed Plaintiff that her position was being eliminated as part of a layoff.  Subsequently, on or about September 28, 2011, Plaintiff received a letter from Ms. Warner stating that her "position has been eliminated due to a layoff and no comparable position with comparable pay is available." Additionally another employee, Diane Cartier, who also had medical issues, was "laid off" by Defendant on or about the same date.

34. The results of Plaintiff's endoscopy showed esophagitis, for which medication is still prescribed and a hiatal hernia. The colonoscopy revealed polyps that were removed.

35. Following her termination of employment, Defendant hired a former college temporary employee, Stephanie Michaud, to perform Plaintiff's duties.

**COUNT ONE:**     **DISABILITY DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, 42 USC § 12101** *et seq.*

36. Plaintiff hereby incorporates Paragraphs 1 through 35 above as if fully set forth herein.

37. Based on the foregoing, Defendant intentionally harassed, discriminated against, and terminated Plaintiff's employment based on Plaintiff's disability or having regarded or perceived Plaintiff as having a physical disability, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA").

38. At all times relevant to this Complaint, Plaintiff was a person with a disability as that term is defined under ADA.

39. The aforementioned actions on the part of Defendant towards Plaintiff were intentional in that they were willful, wanton, and/or were taken in reckless disregard of Plaintiff's rights.

40. As a result of the aforementioned unlawful acts, Plaintiff has suffered damages including but not limited to, lost wages, lost benefits, emotional distress, mental anguish, humiliation, embarrassment, loss of enjoyment of life, loss of enjoyment of profession, and uninsured medical expenses.

41. As a result of Defendant's actions, Plaintiff has incurred, and will continue to incur, attorney's fees and costs in connection with pursuing this action.

**COUNT TWO:**     **DISABILITY DISCRIMINATION IN VIOLATION OF THE CONNECTICUT FAIR EMPLOYMENT PRACTICES ACT, CONN. GEN. STAT. § 46a-60** *et seq.*

42. Plaintiff hereby incorporates Paragraphs 1 through 33 above as if fully set forth herein.

43. Based on the foregoing, Defendant intentionally harassed, discriminated against, and terminated Plaintiff's employment based on Plaintiff's disability or having regarded or perceived Plaintiff as having a physical disability, in violation of CFEPA.

44. At all times relevant to this Complaint, Plaintiff was a person with a disability as that term is defined under CFEPA.

45. The aforementioned actions on the part of Defendant towards Plaintiff were intentional in that they were willful, wanton, and/or were taken in reckless disregard of Plaintiff's rights.

46. As a result of the aforementioned unlawful acts, Plaintiff has suffered damages including but not limited to, lost wages, lost benefits, emotional distress, mental anguish, humiliation, embarrassment, loss of enjoyment of life, loss of enjoyment of profession, and uninsured medical expenses.

47. As a result of Defendant's actions, Plaintiff has incurred, and will continue to incur, attorney's fees and costs in connection with pursuing this action.

**COUNT THREE:**   **RETALIATORY DISCHARGE IN VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT, 29 U.S.C. §2601** *et seq*.

48. Plaintiff hereby incorporates Paragraphs 1 through 33 above as if fully set forth herein.

49. Based on the foregoing, Defendant discriminated and/or retaliated against Plaintiff by terminating her employment on September 28, 2011 as a result of Plaintiff's protected leaves of absence.

50.     The aforementioned actions on the part of the Defendant towards Plaintiff were intentional in that they were willful, wanton, and/or were taken in reckless disregard of Plaintiff's rights.

51.     As a result of the aforementioned unlawful acts, Plaintiff has suffered damages, including but not limited to, lost wages, lost benefits, and other monetary loss.

52.     As a result of Defendant's actions, Plaintiff has incurred, and will continue to incur, attorney's fees and costs in connection with pursuing this action.

**COUNT FOUR:     INTERFERENCE WITH RIGHTS IN VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT, 29 U.S.C. §2601 *et seq*.**

53.     Plaintiff hereby incorporates Paragraphs 1 through 33 above as if fully set forth herein

54.     Based on the foregoing, Defendant interfered with Plaintiff's exercise of rights under the FMLA by restraining and/or denying the exercise of her rights under the FMLA. Defendant further interfered with Plaintiff's rights by terminating her during her FMLA leave of absence and refusing to reinstate Plaintiff following her FMLA leave of absence.

55.     Through the aforementioned actions, Defendant denied Plaintiff's substantive rights under the FMLA.

56.     As a result of the aforementioned unlawful acts, Plaintiff has suffered damages, including but not limited to, lost wages, lost benefits, and other monetary loss.

57.     As a result of Defendant's actions, Plaintiff has incurred, and will continue to incur, attorney's fees and costs in connection with pursuing this action.

**DEMAND FOR RELIEF**

**WHEREFORE**, the Plaintiff claims:

1. Liquidated Damages;

2. Back pay and lost employment benefits;

3. Front pay and/or reinstatement;

4. Other compensatory damages, including, but not limited to, compensation for adverse health effects, humiliation, embarrassment, loss of enjoyment of life, and loss of enjoyment of profession.

5. Interest and costs;

6. Statutory and/or common law Attorneys' fees and legal costs;

7. Punitive Damages; and

8. Such other relief as in law or equity may pertain.

**JURY DEMAND**

Plaintiff hereby claims a trial by jury.

                        PLAINTIFF, Donna Johnson

By:   //s// Magdalena B. Wiktor
Magdalena B. Wiktor (ct28647)
Madsen, Prestley & Parenteau, LLC
105 Huntington Street, New London, CT 06320
Tel: (860) 442-2466  Fax: (860) 447-9206
mwiktor@mppjustice.com
Her Attorneys

## **CERTIFICATION OF SERVICE**

  I hereby certify that on this 6th day of October, 2014, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system and by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

           /s/  Magdalena B. Wiktor
           Magdalena B. Wiktor